```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------X
ANTHONY FAVIA

          Movant,
                                         MEMORANDUM AND ORDER
    - against -

UNITED STATES OF AMERICA                 Civil Action No.
                                         CV-01-6385(DGT)
          Respondent.

-----------------------------X
```

TRAGER, District Judge:

Pro se movant Anthony Favia ("Favia" or "movant") files this § 2255 motion seeking to challenge his thirty month sentence. For the following reasons, the motion is denied.

**Background**

**(1)**

**The Plea Hearing**

On January 26, 2000, movant Anthony Favia pled guilty before Magistrate Judge Pollak to one count of conspiracy to interfere with interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951. Mot. to Vacate, Set Aside, or Correct Sentence at 2. Specifically, movant pled guilty to serving as the getaway driver in the armed robbery of the employees of a Petland Discount Store on December 27, 1997 in which $3,876 was

stolen.[1] Transcript of Guilty Plea ("Plea Hr'g Tr.") at 24:9-25:15; Presentence Investigation Report ("PSR") ¶ 14. At this hearing, Favia was represented by Emmanuel Moore ("Moore"). In accordance with his guilty plea, Favia entered into a plea agreement with the United States government ("Plea Agreement") which specified an estimated total offense level of 18 and a sentence range of 27 to 33 months.[2] Plea Agreement ¶ 2. The Plea Agreement contained an appeal waiver provision, which provided that the movant "will not file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a sentence within or below the range" of 27 to 33 months. Plea Agreement ¶ 4.

At the plea allocution hearing, Favia stated that no one had promised him how long of a sentence he would ultimately receive. Plea Hr'g Tr. at 16:25-17:2 (Q: "Has anyone made any promise to you as to what your sentence will be?" A: "No."). Favia was

---

[1] Favia and his co-conspirators robbed the Petland employees while the employees were driving to a bank to deposit company money. PSR ¶ 14. Favia also served as the getaway driver in a December 11, 1998 armed robbery of the employees of a Blockbuster Video store in which $1,900 was stolen. PSR ¶¶ 27, 40. However, movant only allocuted to a single count of conspiracy to violate 18 U.S.C. § 1951 for the Petland Discount robbery. Plea Hr'g Tr. at 24:9-11.

[2] The total offense level of 18 in the Plea Agreement was based upon a base offense level of 20, U.S.S.G. § 2B3.1(a), increased by two levels for a loss of greater than $10,000, U.S.S.G. § 2B3.1(b)(7), and decreased by three levels for Favia's acceptance of responsibility. Plea Agreement ¶ 2.

also informed by Judge Pollak that the recommended sentence in the Plea Agreement was only a non-binding estimate for the sentencing judge to consider, and that no one could promise him a specific sentence prior to the sentencing hearing.  Plea Hr'g Tr. at 17:20-18:4.

**(2)**

**The Sentencing Hearing**

On September 22, 2000, Favia was sentenced by Judge Nickerson in the United States District Court for the Eastern District of New York.  The PSR prepared by the Probation Department calculated an adjusted offense level of 22 and a sentence range of 41 to 51 months.  PSR ¶¶ 44-64.[3]  Moore then requested a downward departure from the PSR's calculation based upon a number of factors relating to Favia's "background," including his psychological problems, family circumstances, minor

---

[3] The total offense level of 22 in the PSR was based upon a base offense level of 20, U.S.S.G. § 2B3.1(a), plus a five-level increase for the use of a firearm by a co-defendant in the commission of the robbery, U.S.S.G. § 2B3.1(b)(2)(C) plus two levels for a multi-count adjustment, minus two levels for serving as a minor participant in the offense, U.S.S.G. § 3B1.2(b), minus three levels for acceptance of responsibility.  PSR at ¶¶ 44-64. The multi-count adjustment was included in the calculation based upon the Probation Department's belief that Favia pled guilty to both the December 27, 1997 robbery of the Petland Discount Store, and the December 11, 1998 robbery of the Blockbuster Video.  This multi-count adjustment was not taken into account by the parties at the time they entered into the Plea Agreement, as Favia only pled guilty to the Petland Discount robbery.  Transcript of Criminal Cause for Sentencing ("Sentencing Hr'g Tr.") at 10:19-11:10, 11:22-12:9.

3

role in the offense, aberrant behavior and pre-arrest rehabilitation. Transcript of Criminal Cause for Sentencing ("Sentencing Hr'g Tr.") at 12:25-14:24. Moore further requested that the court recommend Favia for the Shock Incarceration Program.[4] Sentencing Hr'g Tr. at 15:4-6. Favia also requested a downward departure as a result of his rehabilitative efforts on his own behalf. Sentencing Hr'g Tr. at 15:23-16:4. In response to these requests, Judge Nickerson initially reduced Favia's offense level from 22 to 20, and sentenced movant to 33 months incarceration, the statutory minimum for that offense level. Sentencing Hr'g Tr. at 16:9-12. In addition, Favia was sentenced to two years of supervised release, and ordered to pay a $100 special assessment and $5,776 in restitution. Sentencing Hr'g Tr. at 16:12-17:8.

After the initial downward departure from the PSR was granted, Moore again requested that the court recommend the Shock Incarceration Program for Favia. Sentencing Hr'g Tr. at 17:22-

---

[4] The Shock Incarceration Program refers to the Bureau of Prisons's Intensive Confinement Center program. 18 U.S.C. § 4046; 28 C.F.R. § 524.31 (2005). According to the Bureau of Prisons, "the intensive confinement center program is a specialized [six-month] program combining features of a military boot camp with the traditional correctional values of the Bureau of Prisons, followed by extended participation in community-based programs. The goal of this program is to promote personal development, self-control, and discipline." Bureau of Prisons Program Statement 5390.08 at 1, available at http://www.bop.gov/policy/progstat/5390_008.pdf.

23. After the government informed Judge Nickerson that a sentence must be between 12 and 30 months[5] to meet the program's eligibility requirements,[6] Moore requested an additional departure in order to qualify movant for the Shock Incarceration Program. Sentencing Hr'g Tr. at 19:6-10. Judge Nickerson then further departed downward to a total offense level of 19 and imposed a sentence of 30 months so that Favia would satisfy the Shock Incarceration Program's sentence duration eligibility requirement. Sentencing Hr'g Tr. at 20:3-5. Judge Nickerson also stated he would recommend Favia for the Shock Incarceration Program, but emphasized that a recommendation was the most he could offer Favia. Sentencing Hr'g Tr. at 20:6-8. Upon arriving at his designated site of incarceration, Favia alleges that he

---

[5] See 28 C.F.R. § 524.31(a) (2005) ("Eligibility for consideration of placement in the intensive confinement center program requires that the inmate is–(1)(i) serving a sentence of more than 12, but no more than 30 months . . . .").

[6] In order to qualify for placement in the Shock Incarceration Program, a convict must also be: "serving his or her first period of incarceration or ha[ve] a minor history of prior incarceration"; not "serving a term of imprisonment for a crime of violence or felony offense (a) that has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or (b) that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives...or (c)that by its nature or conduct presents a serious potential risk of physical force against the person or property of another, or (d) that by its nature or conduct involves sexual abuse offenses committed upon children"; "appropriate for housing in minimum security";"physically and mentally capable of participating in the program"; and "a volunteer." 28 C.F.R. § 524.31(a)(2-6) (2005).

5

was informed that the offense for which he was convicted rendered him "categorically excluded" from admittance into the Shock Incarceration Program. Movant's Brief ("Mov.'s Br.") at i.[7]

### (3)
### The § 2255 Motion

On September 25, 2001, Favia filed a pro se habeas corpus motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of 30 months incarceration. Mot. to Vacate, Set Aside, or Correct Sentence at 2. Favia has not previously appealed or otherwise challenged his sentence. Mot. To Vacate, Set Aside, or Correct Sentence at 2.

Specifically, in his § 2255 motion, Favia claims he received ineffective assistance of counsel at his sentencing hearing based upon three grounds: 1) because Moore failed to seek a downward departure based upon his pre-arrest rehabilitation, Mov.'s Br. At 5; 2) because Moore failed to seek a downward departure based upon his aberrant behavior, Mov.'s Br. at 6; and 3) because Moore failed to inform Favia that he would not qualify for the Shock Incarceration Program, Mov.'s Br. at 4. The actual language of

---

[7] As discussed infra, the record does not contain an explanation from the Bureau of Prisons indicating why it did not admit Favia into the Shock Incarceration Program, specifically, whether he actually was ineligible or whether he was rejected on other grounds.

6

Favia's § 2255 motion states that "[d]efense [c]ounsel persuaded [movant] that acceptance of shock incarceration would be his best approach to shortening his sentence. He failed to [move] for an extraordinary rehabilitation/combination of factors departure. His client was legally ineligible for shock incarceration." Mot. to Vacate, Set Aside, or Correct Sentence at 5.

## Discussion

### (1)

### Favia Waived His Right to Appeal

Although Favia's § 2255 motion is timely,[8] Favia is barred from challenging his sentence by the appeal waiver provision in the Plea Agreement. The established rule in the Second Circuit is that "there is no general bar to a waiver of collateral attack rights in a plea agreement." Zhang v. United States, 401 F. Supp. 2d 233, 238 (E.D.N.Y. 2005) (quoting Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002)). However, there are exceptions - notably, an appeal waiver will not be enforced where the challenge is directed at "the validity of the process by which the waiver has been procured." Felix v. United States, No. 05-CV-3925, 2005 WL 2088400, at *2 (S.D.N.Y.

---

[8] Favia's motion satisfies the one-year statute of limitations on § 2255 motions. A final judgment in his criminal case was rendered on October 6, 2000, and he filed his motion on September 19, 2001. See Fed. R. App. P. 4(b)(1)(A).

7

Aug. 29, 2005) (quoting Frederick, 308 F.3d at 195). In the present case, Favia's § 2255 motion alleging ineffective assistance of counsel does not challenge the formation of the Plea Agreement itself or the waiver provision contained in it. See Mov.'s Br. at i ("The petitioner does not challenge his conviction in this case."). Instead, his motion is limited to challenging the sentence he received, which is entirely separate from his decision to enter a guilty plea and from the terms of his Plea Agreement.

Generally, a defendant who, in a plea agreement, waives his right to appeal a sentence falling within the stipulated Sentencing Guidelines range is barred from appealing that sentence – either by direct appeal, or, collaterally, through a § 2255 motion. See Flores v. United States, No. 04-CV-9937, 2007 WL 766308, at *2 (S.D.N.Y. Mar. 14, 2007) ("A defendant's waiver of the right to collaterally attack his sentence under 28 U.S.C. § 2255 is generally enforceable as long as the record contains sufficient evidence to establish that the defendant knowingly and voluntarily waived these rights."); see also United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004) (an appeal waiver provision will be enforced only if "the record 'clearly demonstrates' that the waiver was both knowing (in the sense that the defendant fully understood the potential consequences of his waiver) and voluntary.") (quotation marks and citation omitted);

United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000) (the Second Circuit "has repeatedly upheld the validity of such waivers, with the obvious caveat that such waivers must always be knowingly, voluntarily, and competently provided by the defendant"). This rule holds true even where the movant alleges that his counsel rendered ineffective assistance at sentencing. See Panah v. United States, No. 05-CV-337S, 2006 WL 2056728, at *4 (W.D.N.Y. Jul. 21, 2006) ("In the context of a [§ 2255] challenge to a sentence, a waiver agreement is fully enforceable even where ineffective assistance of counsel is claimed."); see also United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) (dismissing an appeal of a sentence falling within the range specified by the plea agreement alleging ineffective assistance of counsel on the ground that the agreement contained a voluntarily and knowingly agreed to appeal waiver provision). To allow a defendant to challenge his sentence, by appeal or by a section 2255 motion, when he expressly waived the right to do so in a plea agreement "would render the plea bargaining process and the resulting agreement meaningless." Salcido-Contreras, 990 F.2d at 53.

The Second Circuit has recognized a narrow set of exceptions to the general rule governing appeal waiver provisions. A waiver in a plea agreement will not be enforced where: (1) the waiver was not agreed to knowingly and voluntarily; (2) the government

9

breaches the plea agreement; (3) constitutionally impermissible factors are relied upon in determining the sentence; or (4) the court "fail[s] to enunciate any rationale for the sentence." Gomez-Perez, 215 F.3d at 319.

Here, Judge Nickerson sentenced Favia to a 30-month period of incarceration, a sentence falling within the range covered by the Plea Agreement's appeal waiver provision, thereby making the waiver binding and effective. Furthermore, none of the exceptions to the enforceability of waivers are present. Favia's § 2255 motion does not allege that his sentence was based upon unconstitutional criteria or that the government breached the terms of the plea agreement, and Judge Nickerson explained the basis behind the sentence he imposed upon Favia. See Sentencing Hr'g Tr. at 19:6-20:10. Furthermore, the record reflects that Favia was aware of the inclusion of the waiver provision in the Plea Agreement, and that he understood the consequences of its terms:

> THE COURT: You also understand that as long as the sentence that the Court imposes is either the 27 to 33 months that's in the Plea Agreement, or it's less than that, you have agreed not to file an appeal or otherwise challenge your conviction or your sentence. Do--
>
> THE DEFENDANT: I understand.
>
> THE COURT: --you understand that well?

Plea Hr'g Tr. at 21:12-18.

The record also indicates that Favia knowingly and

10

voluntarily agreed to waive the right to challenge his sentence.[9]
At the plea allocution hearing, Favia stated that he had reviewed
the Plea Agreement, that he understood its terms, and that it
"fully and accurately" represented his agreement with the
Government:

> THE COURT: Okay, have you had a chance to read this before?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And do you understand it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. And is that your signature on the last page? Just flip to the last page for me.
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: Okay. Does this agreement fully and accurately reflect your understanding of the agreement that you have with the Government?
>
> THE DEFENDANT: Yes, it does.

Plea Hr'g Tr. at 16:10-20.

Consequently, Favia's claims of ineffective assistance of

---

[9] As discussed infra, Favia alleges that his counsel was ineffective at sentencing because he failed to "know the law," namely, that Favia was ineligible for the Shock Incarceration Program. See Petr.'s Br. at i. Even if Favia's allegation was correct, there is nothing in the record that indicates that Favia entered into the Plea Agreement contingent upon a promise that he would be admitted into the Shock Incarceration Program. In fact, there is no mention of Favia's admittance into the Shock Incarceration Program in the Plea Agreement itself, nor is there any indication elsewhere in the record that it was ever discussed by Favia and Moore prior to the sentencing hearing. Therefore, this allegation does not impact whether Favia's agreement to waive his right to appeal or challenge his sentence was made knowingly and voluntarily.

counsel raised in the present § 2255 motion are procedurally barred. See, e.g., United States v. Pipitone, 67 F.3d 34, 38-39 (2d Cir. 1995)(ruling that a § 2255 challenge of a 63-month sentence was precluded by an appeal waiver provision that applied to a sentence range of 63-78 months); Florez v. United States, No. 00-CV-5073, 2007 WL 162764, at *3 (E.D.N.Y. Jan. 18, 2007) (denying a § 2255 motion challenging a sentence where the plea agreement's waiver provision applied to sentences between or below 210-262 months and movant received a 120 month sentence); Yoon v. United States, No. 99-CV-5661, 2000 WL 516403, at *2 (E.D.N.Y. Mar. 17, 2000) (rejecting a § 2255 motion where movant's sentence fell within the range specified in the plea agreement's waiver provision); LaSalle v. United States, No. 97-CV-2830, 1998 WL 78185, at *1 (S.D.N.Y. Feb. 24, 1998) (enforcing a plea agreement's waiver provision to bar consideration of the merits of a § 2255 motion where the movant's sentence fell within the stipulated range).

**(2)**

**Favia's Claims Fail on the Merits**

Even if the appeal waiver provision did not bar consideration of Favia's § 2255 motion, the ineffective assistance of counsel claims he raises in it fail on the merits.

12

**a. Grounds for Departure: Rehabilitation and Aberrant Behavior**

Favia first claims that Moore failed to move for a downward departure from the Sentencing Guidelines based on his pre-arrest rehabilitation and aberrant behavior. Mot. To Vacate, Set Aside, or Correct Sentence at 5-6. However, it is obvious from the record that Moore did, in fact, raise each of these arguments as grounds for departure.

At the sentencing hearing, Moore explicitly raised Favia's rehabilitation as a basis for a departure from the Sentencing Guidelines. See, e.g., Plea Hr'g Tr. at 13:13-13:22 (Moore: "[Favia] got himself together and in late December of 1998, he voluntarily relocated to Tulsa, Oklahoma to start a new life with his mother . . . Looking at Mr. Favia's background, he's presently employed . . . It shows that Mr. Favia, as he stands before you today, your Honor, is a changed and renewed individual.").[10]

---

[10] It should be noted that, although duly argued by Moore, Favia's pre-arrest efforts to rehabilitate himself failed to meet the standard of "extraordinary" rehabilitation required to warrant departure on that basis alone. United States v. Bryson, 163 F.3d 742, 747 (2d Cir. 1998) ("there must be evidence of extraordinary rehabilitation before the sentencing court can downwardly depart on this basis") (emphasis added). Favia's rehabilitation began on December 23, 1998, less than two weeks after the Blockbuster Video robbery of December 11, and one week after a member of his "crew" was arrested for robbery on December 17, 1998. Mem. in Opp. to Section 2255 Petition ("Opp'n Br.") at 16. Based upon these facts, it appears that Favia's efforts at rehabilitation were not independently motivated; rather, they were "undertaken at the spur of impending prosecution," and,

13

Favia also asserts that Moore failed to argue for a downward departure based upon his aberrant behavior. However, here too, the record clearly reflects that aberrant behavior was raised by Moore at the sentencing hearing. See, e.g., Sentencing Hr'g Tr. at 13:9-11 (Moore: "Unfortunately, [Favia's offense conduct] was abhorrent [sic] behavior on his part from more or less a normal and law-abiding life."). By raising Favia's aberrant behavior - in combination with his psychological problems, family circumstances, and minor role in the offense - Moore helped secure Favia a downward departure of two offense levels, and a reduced sentence of 33 months. As such, it is clear that Moore successfully raised Favia's aberrant behavior as a ground for a downward departure.

**b. Shock Incarceration Program**

Favia's third claim - that Moore's counsel was ineffective for failing to "know the law" and to inform movant that he was categorically ineligible[11] for the Bureau of Prisons's (BOP)

---

therefore, were legally insufficient to warrant departure. United States. v. Workman, 80 F.3d 688, 701 (2d Cir. 1996).

[11] While the record lacks a statement from the BOP detailing why Favia was not admitted into the Shock Incarceration Program, the Court assumes that the offense that Favia was convicted of - conspiracy to interfere with interstate commerce by robbery - combined with the fact that a firearm was displayed by a co-conspirator during the commission of the crime (as reflected in the "Specific Offense Characteristics" section of his PSR)

14

Shock Incarceration Program - is also unpersuasive.  In order for Favia to prevail on his ineffective assistance of counsel claim regarding his eligibility for the Shock Incarceration Program, Favia must satisfy the two prongs of the Strickland test.  Favia must demonstrate that: 1) Moore's "performance was deficient"; and 2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

Without considering the first prong,[12] it is clear that Favia is unable to meet the second prong of the Strickland test, for he cannot establish that Moore's performance at the sentencing hearing "prejudiced" his attempts to secure as short of a sentence as possible.  Moore's "error" in requesting that Judge Nickerson recommend Favia for the Shock Incarceration Program, despite his ineligibility, actually proved advantageous

---

rendered him categorically ineligible for the Shock Incarceration Program.  See generally, Bureau of Prisons' Program Statement 5162.04 (BOP PS 5162.04) at 11, available at http://www.bop.gov/policy/progstat/5162_004.pdf.  The involvement of the firearm transformed Favia's offense from one not committed with force to one "involv[ing] the use or threatened use of force," thereby barring Favia from consideration for admittance into the Shock Incarceration Program.  See 28 C.F.R. § 524.31(a)(3).

[12] See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.  In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.")

to Favia by earning him a one-level reduction from his total offense level and a three-month decrease in his sentence.  As such, it is clear that Favia suffered no prejudice as a result of his attorney's efforts.  See Odiana v. United States, No. 1:06-CV-1423, 2007 WL 1851421, at *4 (N.D.N.Y. Jun. 26, 2007) ("Since petitioner cannot show his counsel's actions prejudiced him, he cannot have been denied ineffective assistance of counsel.").  Moreover, had Favia been explicitly told that he was ineligible for the Shock Incarceration Program, his only possible remedy would have been to withdraw his plea - a course which would have been most unwise considering it would have changed his Sentencing Guidelines level and range substantially.

Finally, to the extent that Favia alleges that Moore's ineffectiveness consisted of him promising Favia that Favia would be admitted into the Shock Incarceration Program, this argument is disingenuous based on the record.  At his plea hearing, Favia expressly denied that anyone had guaranteed him a specific sentence.  Plea Hr'g Tr. at 16:25-17:2 (Q: "Has anyone made any promise to you as to what your sentence will be?" A: "No.").  He admitted he understood that no such promises could be made.  Plea Hr'g Tr. at 17:20-18:4 (Q: "The important thing you need to understand is that until the time of sentencing . . . no one can promise you what your sentence will be-not Mr. Moore, not the Government attorney, not me, not even Judge Nickerson until then.

Do you understand that?"  A: "I understand.").  Thus, it is clear that no one, including Moore, made any promise to Favia regarding his sentence, and that Favia understood that no one, including Moore, could do so prior to his sentencing hearing.  In addition, at the sentencing hearing itself Judge Nickerson made it explicitly clear to Favia that he could at most recommend the Shock Incarceration Program. Sentencing Hr'g Tr. at 20:6-8 (Q: "I can only recommend the shock treatment."  A: "I understand that, your Honor."  Q: "I'll recommend that.").  Favia cannot now use a § 2255 motion to contradict his earlier statements simply because the sentence he ultimately received did not conform to the exact outcome he had hoped for or expected.  See Rosenfeld v. United States, 972 F. Supp. 137, 146 (E.D.N.Y. 1997) (rejecting a movant's claim of ineffective assistance of counsel alleging that his attorney guaranteed a specific sentence based on movant's statements at the plea hearing).

## Conclusion

For the aforementioned reasons, Favia's motion is denied. The Clerk of the Court is directed to enter judgment accordingly and to close the case.

Dated: Brooklyn, NY
      July 17, 2007

SO ORDERED:

_____/s/_____
David G. Trager
United States District Judge